UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAUN L. MURPHY, | ) |
| | ) |
| Plaintiff, | ) Case No. 21-CV-03678 |
| | ) |
| v. | ) Judge Sharon Johnson Coleman |
| | ) |
| PAUL REILLY CO. ILLINOIS, INC., and | ) |
| MICHAEL FITZGERALD | ) |
| | ) |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Shaun Murphy ("Plaintiff") brings this suit against Paul Reilly Co. Illinois, Inc. ("PRC") and Michael Fitzgerald ("Fitzgerald") (together, "Defendants"). Plaintiff's seven-count complaint alleges unlawful termination in violation of the Americans with Disabilities Act ("ADA") (against PRC)(Count I); failure to accommodate in violation of the ADA (against PRC) (Count II); unlawful termination in violation of the Illinois Human Rights Act ("IHRA") (against PRC) (Count III); failure to accommodate in violation of the IHRA (against PRC) (Count IV); retaliatory discharge in violation of Illinois Common Law and the Illinois Workers' Compensation Act ("IWCA") (against PRC) (Count V); unlawful interference in violation of the Family Medical Leave Act ("FMLA") (against PRC and Fitzgerald, separately)(Counts VI and VII). Defendants move for summary judgment. For the reasons below, the Court grants Defendants' motion [75].

**Background**

   *A. Local Rule 56.1*

Defendants argue that the Court should strike Plaintiff's response to their Rule 56.1 facts, as Plaintiff sets forth additional facts, evidence, and legal arguments in violation of Local Rule 56.1(e)(2). Although Rule 56.1 (e)(2) bars parties from incorporating new facts in their response, it allows parties to assert legal objections "based on admissibility, materiality, or absence of evidentiary

support." N.D. Ill. LR. 56.1(e)(2). The Court disregards legal arguments or facts not within these bounds. *See Collins Engineers, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 19-CV-01203, 2022 WL 20840940, at *3 (N.D. Ill. Mar. 29, 2022) (Valderrama, J.).

Defendants also move to strike Plaintiff's declaration he submitted in support of his Rule 56.1 facts statement. Generally, a self-serving affidavit can be used to survive summary judgment but cannot be used "to manufacture material fact questions . . . that contradict[] prior sworn testimony." *United States v. Funds in the Amount of $100,120*, 730 F.3d 711, 718 (7th Cir. 2013). The Court will disregard Plaintiff's assertions in his declaration that contradict his deposition.

B. *Facts*

From October 2017 to February 2020 Plaintiff worked as a Service Technician at PRC. Three PRC employees are relevant to Plaintiff's allegations: Harry Girup ("Girup") (Plaintiff's direct supervisor), Mary Jones ("Jones") (PRC's HR director), and Defendant Fitzgerald (the President and CEO of PRC).

On August 17, 2018, Plaintiff injured his right knee on the job, which led to MD Stephen Arndt ("Dr. Arndt") performing an acute medial meniscus tear surgery on Plaintiff.[1] Plaintiff returned to work on November 19, 2018. When Plaintiff filed a workers' compensation claim for his 2018 injury, he received $155,540.00 in benefits from PRC's workers' compensation insurance company. This was PRC's highest workers' compensation claim from 2016 through 2020.

On November 11, 2019, Plaintiff re-injured his right knee at work, and filed another workers' compensation claim on November 25, 2019. He continued to work, while he experienced swelling in the knee, discomfort, and walked with a limp. Plaintiff saw Dr. Arndt again for treatment, who excused him from work for a few days.

---

[1] "[M]eniscus surgery is a common operation to remove or repair a torn meniscus." *Meniscus Surgery*, Cleveland Clinic, https://my.clevelandclinic.org/health/treatments/21508-meniscus-surgery.

2

A week after visiting Dr. Arndt, Plaintiff visited MD Kevin Walsh ("Dr. Walsh"), who diagnosed him with osteoarthritis[2] in the right knee, gave him a cortisone injection, and ordered an MRI. Dr. Walsh wrote a doctor's note for Plaintiff to return to work approximately a week later. After his initial 2019 appointments, Plaintiff informed Girup of his injury, doctors' visits, and upcoming MRI via email.

Before receiving his MRI, Plaintiff messaged Dr. Walsh that he was still feeling pain in his knee and requested another note from Dr. Walsh to be excused from work until he received the scan's results. Once Dr. Walsh received Plaintiff's MRI results, Plaintiff states Dr. Walsh recommended he get an injection or knee replacement. Upon that recommendation, Plaintiff opted for the knee replacement surgery, explaining that it was a more permanent solution.

Although Dr. Arndt and Dr. Walsh excused Plaintiff from work, during the time they treated him for his 2019 injury, they did not set explicit activity restrictions.

During his deposition Plaintiff gave testimony that prior to his knee replacement surgery, he was able to sit and stand for more than a few minutes and drive a vehicle, but he still experienced pain. Once Plaintiff started physical therapy after the knee replacement surgery, he reported he experienced moderate to extreme difficulty running, walking, standing and sitting for more than an hour, and doing other everyday tasks.

On February 4, 2020, Plaintiff emailed Jones to explain that he was in physical therapy and would be reevaluated for work on March 9, 2020. He also expressed that he wanted to make sure he had all the right paperwork to return to the job. Jones replied that all PRC needed was a return-to-work with "no restrictions." On March 9, 2020, Plaintiff was cleared to return to work without restrictions.

---

[2] Osteoarthritis "is the most common form of arthritis." *Osteoarthritis*, Arthritis Foundation, https;//www.arthritis.org/diseases/osteoarthritis.

3

According to Defendants, Jones was the only one who knew that Plaintiff's workers' compensation claim had been denied. However, both Fitzgerald and Girup knew about Plaintiff's 2019 injury.

After both injuries, Plaintiff received his annual work performance ratings. In December 2018, Plaintiff received an 89.5 out of 100 overall, 1.0 out of 5.0 for safety because of his injury and 4.5 out of 5 for attendance. When Plaintiff was on leave for his 2019 injury Girup started to draft another annual review, which is not dated or signed but appears to have been drafted in December 2019. In the draft, Plaintiff received a 1.0 out of 5.0 for attendance. Defendants state that Plaintiff called off frequently and missed 33 days total before his 2019 knee injury and 99 days after the 2019 injury. Plaintiff states the days he took off were excused absences. And, although not recorded in the draft, Girup stated in his deposition that Plaintiff's safety score would be 1.0 out of 5.0 due to his injury.

After Girup met with Fitzgerald and informed him of Plaintiff's 2019 performance ratings, Plaintiff was terminated on February 18, 2020. Plaintiff's termination occurred 19 days before Dr. Walsh released Plaintiff to work on March 9, 2020. Therefore, from the time Plaintiff was injured until February 2020, Plaintiff never returned to work at PRC. The parties contest additional details of the incidents that led to Plaintiff's termination, including customer complaints, altercations, and other compliance concerns.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.

4

Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). When determining whether a genuine dispute as to any material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (citation omitted).

**Discussion**

*Counts I and II: ADA Claims*[3]

First, Plaintiff alleges PRC unlawfully terminated him because of his osteoarthritis in violation of the ADA.[4] To prevail on his discrimination claim, Plaintiff would need to introduce evidence that (1) he was disabled within the meaning of the ADA; (2) he was qualified to perform the essential functions of his disability; (3) PRC terminated him because of his disability. *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016). Defendants argue Plaintiff fails to show all three elements and therefore summary judgment is proper for Count I.

An individual has a disability under the ADA if (1) he has an impairment that substantially limits one or more of his major life activities; (2) he has a record of the impairment; or (3) his employer regards him as having such impairment. 42 U.S.C. § 12102(2). Analyzing whether an

---

[3] The ADA Amendments Act of 2008 ("the Amendments") was enacted on September 25, 2008, and became effective on January 1, 2009. The Court refers to the ADA to encompass the Amendments. Caselaw which conflicts with Congress's intention when amending the ADA is antiquated. *See De Hoyos v. Ne. Illinois Reg'l Commuter R.R. Corp.*, No. 21 C 3647, 2023 WL 5289446, at *7 (N.D. Ill. Aug. 16, 2023) (Kennelley, J.) (explaining that the defendant's arguments, which relied on outdated precedent, was "rendered obsolete" by the less demanding standards provided by the Amendments).

[4] Defendants argue that the Court should not consider Plaintiff's osteoarthritis as his disability because he did not allege it was his disability in his complaint. In his complaint, Plaintiff explicitly states he "suffered a severe knee injury." Because the Federal Rules of Civil Procedure are construed liberally, Plaintiff's allegation put the Defendants on notice that his claim would involve discrimination based on a knee injury. *See Haiman v. Vill. of Fox Lake*, 55 F. Supp. 2d 886, 894–95 (N.D. Ill. 1999) (Alesia, J.).

individual is disabled within the scope of the ADA must not be extensive and courts should construe the definition broadly. 42 U.S.C. § 12102(4); ADAAA § 2(b)(5), 122 Stat. at 3554.

Defendants acknowledge that osteoarthritis is an impairment but argues that Plaintiff fails to present evidence that his osteoarthritis is a disability. Defendants first emphasize that the doctors did not restrict Plaintiff from working and that he could still walk, drive, and care for himself before his surgery. As far as his physical condition after his surgery, Defendants point out that Plaintiff's recovery period was temporary.

Plaintiff responds that his osteoarthritis is a disability because the impairment limited his ability to kneel, walk, stand, climb, or work. Plaintiff further explains that although his condition while recovering from his surgery was temporary it was still substantially limiting.

Major life activities included walking, standing, and caring for oneself, *see* 42 U.S.C. § 12102(2)(A), all of which Plaintiff had issues with either before or after his surgery. Although Plaintiff testified that before the surgery he was able to sit and stand for more than a few minutes and drive, he also testified that he walked with a limp and was in pain. Plaintiff also reported to his physical therapist after his surgery that he had moderate to extreme discomfort walking, running, standing and sitting for longer than an hour, and performing other everyday activities because of his knee. While this recovery condition was temporary, even transitory impairments can be considered a disability under the ADA. *See* 42 U.S.C. § 12102(3)(B). The Court finds that there is enough evidence for a reasonable jury to conclude that Plaintiff has a disability pursuant to the ADA.

Next, Defendants argue that Plaintiff is not a qualified individual under the ADA because he could not perform his job. Plaintiff responds that he could have performed the job if he received an accommodation of an additional 14 days' time off to recover from his surgery and been cleared to work without restrictions.

A qualified individual is one "who, with or without reasonable accommodation, could perform the essential functions of the employment position." *Stragapede v. City of Evanston, Illinois,* 865 F.3d 861, 865 (7th Cir. 2017) (quoting *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001). In *Byrne* the Seventh Circuit held that one cannot perform their job if they are not working. *Byrne v. Avon Prod., Inc.,* 328 F.3d 379, 381 (7th Cir. 2003). "[T]he sort of accommodation contemplated by the Act is one that will allow the person to 'perform the essential functions of the employment position.'" *Id.* While the Seventh Circuit noted that someone with arthritis may be able to perform a job even when they to take time off periodically or work part-time, *see id.*, Plaintiff's circumstance is quite different. Here, Plaintiff did not seek a few days off every now and then to alleviate his pain. He sought 14 more days off, on top of the consecutive 99 days he had already taken after the injury.

Plaintiff argues he was terminated because "he wanted to return to work" and compares his case to *U.S. Equal Emp. Opportunity Comm'n v. S & C Elec. Co.,* 303 F. Supp. 3d 687 (N.D. Ill. 2018) (Gettleman, J.). Although not binding on this Court, in *S & C Elec. Co.*, the defendant terminated the plaintiff once he was cleared and willing to work. *Id.* at 689. The court explicitly pointed out that if the defendant terminated the plaintiff while he was on leave, it might have avoided violating the ADA. *Id.* In contrast, the evidence in this case shows Plaintiff was terminated 19 days before he was cleared to return to work. Here, Plaintiff was not a qualified individual since he was unable to work and could not perform his job; for that reason, the Court grants Defendants' motion for summary judgment as to Count I.

Plaintiff's failure-to-accommodate claim also depends on him being a "qualified individual." *See Youngman v. Peoria Cnty.*, 947 F.3d 1037, 1042 (7th Cir. 2020). As explained above, Plaintiff does not show he is a qualified individual, so, the Court grants summary judgment on Count II.

7

*Count III and VI: IHRA Claims*

The Court analyzes IHRA claims under the same framework as the ADA. *Winkelman v. Cont'l Nursing & Rehab. Ctr., LLC*, No. 20 CV 2480, 2020 WL 5763813, at *4 n.8 (N.D. Ill. Sept. 28, 2020) (Shah, J.). Plaintiff's IHRA unlawful termination and failure to accommodate claims fail because he cannot meet the required framework, as Plaintiff does not show he is a qualified individual. Therefore, the Court grants summary judgment on Counts III and VI.

*Count V: Retaliatory Discharge in Violation of Illinois Common Law and the Illinois Workers Compensation Act (against PRC)*

Plaintiff alleges he was discharged in retaliation for filing his workers' compensation claims. Illinois recognizes a "cause of action for retaliatory discharge where an employee is terminated because of his actual or anticipated exercise of workers' compensation rights." *Hillmann v. City of Chicago*, 834 F.3d 787, 793 (7th Cir. 2016) (quoting *Beatty v. Olin Corp.*, 693 F.3d 750, 753 (7th Cir. 2012)). For his IWCA claim to survive summary judgment, Plaintiff must present evidence that: (1) he was a PRC employee at the time of the injury; "(2) he exercised a right granted by the IWCA; and (3) his discharge was causally related to the exercise of his rights under the IWCA." *Id.* Defendants only challenge causation.

Defendants argue that Plaintiff cannot show his termination was causally connected to filing his workers' compensation claim because (1) PRC fired him for a valid and non-discriminatory reason, such as his performance and attendance, (2) Girup and Fitzgerald did not have knowledge of his workers' compensation claims, and (3) the proximity of Plaintiff's 2019 workers' compensation claim and his termination was approximately three months, and therefore not suspicious.

Plaintiff responds that direct and circumstantial evidence shows PRC had retaliatory motive. However, he waives his direct and circumstantial evidence arguments as he fails to cite case law that

such evidence amounts to a causal link.[5] *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n. 1 (7th Cir. 2004) ("We have repeatedly made clear that perfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). Plaintiff's sole argument is that the timing of the following events was suspicious: (a) denial of his workers' compensation claim, (b) Girup telling Fitzgerald Plaintiff was going to return (even though he fails to cite evidence of such statement), and (c) Plaintiff's termination.

"The causality requirement calls for more than a sequential connection—the filing of a workers' compensation claim followed by termination.. . . [Rather,] [t]he plaintiff must affirmatively show that the discharge was primarily in retaliation for his exercise of a protected right." *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir. 1994) (internal citation omitted); *see also Gordon.*, 674 F.3d at 775 (citing *Roger* for this principle). Plaintiff has not shown that PRC was improperly motivated when terminating him, as the only evidence he presents to establish causation is "suspicious timing," which is usually insufficient to substantiate a causal connection. *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008) ("Evidence of temporal proximity, however, standing on its own, is insufficient to establish a causal connection for a claim of retaliation."). Therefore, Count V cannot survive summary judgment.

*Count VI and VII: Unlawful Interference in Violation of the FMLA*

Defendants request summary judgment regarding Plaintiff's FMLA claims against PRC and Fitzgerald. First, Plaintiff voluntarily withdrew his FMLA claim in his briefing against PRC. Second, Plaintiff failed to raise any argument regarding his claim against Fitzgerald. Because both actions amount to waiver, the Court grants summary judgment on Counts VI and VII.

---

[5] It appears Plaintiff is attempting to apply a *McDonnel Douglas* burden-shifting framework, which does not apply to Illinois retaliatory discharge claims. *See Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 774 (7th Cir. 2012).

**Conclusion**

For the reasons above, the Court grants Defendants' motion for summary judgment as to all Counts, as the evidence does not show that a reasonable jury would be able to return a verdict in Plaintiff's favor.

IT IS SO ORDERED.

Date: 5/15/2024

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge